CLEARY GOTTLIEB STEEN & HAMILTON LLP
CLEMENT NAPLES, *pro hac vice*
cnaples@cgsh.com
One Liberty Plaza
New York, NY 10006
Telephone: +1 (212) 225-2516

CLEARY GOTTLIEB STEEN & HAMILTON LLP
HEATHER NYONG'O (222202)
hnyongo@cgsh.com
MATTHEW M. YELOVICH (351330)
myelovich@cgsh.com
GREGORY K. SOBOLSKI (267428)
gsobolski@cgsh.com
THOMAS W. YEH (287118)
tyeh@cgsh.com
650 California St., Suite 2400
San Francisco, CA 94108
Telephone: +1 (415) 796-4400

*Attorneys for Defendants*
NAVITAS SEMICONDUCTOR USA, INC.,
CHRISTOPHER ALLEXANDRE,
and FELICIA CHENG

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| RENESAS ELECTRONICS CORPORATION; RENESAS ELECTRONICS AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NAVITAS SEMICONDUCTOR USA, INC.; CHRISTOPHER ALLEXANDRE, an individual; FELICIA CHENG, an individual; and DOES 1-20<br><br>Defendants. | Case No. 5:26-cv-07573-NW<br><br>**DEFENDANTS NAVITAS SEMICONDUCTOR USA, INC., CHRISTOPHER ALLEXANDRE, AND FELICIA CHENG'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: November 4, 2026<br>Time: 9:00 a.m.<br>Courtroom: 3<br>Judge: Hon. Noël Wise |

**TABLE OF CONTENTS**


I. RELEVANT ALLEGATIONS IN RENESAS'S COMPLAINT ........ 3

A. Mr. Allexandre's And Ms. Cheng's Departures From Renesas ........ 4

B. Renesas's Allegations Against Navitas ........ 5

II. LEGAL STANDARD ........ 6

III. ARGUMENT ........ 7

A. Renesas Has Not Identified Any Protectable Trade Secret ........ 7

1. Renesas Identifies Categories Of Information, Not Trade Secrets ........ 8

2. Renesas Does Not Separate Its Claimed Secrets From Public Information ........ 10

3. Renesas Describes Its Alleged Trade Secrets In Deliberately Unbounded Terms ........ 12

B. Renesas Does Not Allege That Mr. Allexandre, Ms. Cheng, or Navitas Improperly Acquired, Used, Or Disclosed Renesas's Alleged Trade Secrets ........ 13

1. Mr. Allexandre and Ms. Cheng ........ 14

2. Navitas ........ 16

C. CUTSA Preempts Renesas's Conversion, Unfair Competition, And Section 502(c) Claims ........ 19

1. Renesas's Conversion Claims Rest On The Same Allegations As Its Trade Secret Claim ........ 20

2. Renesas's Section 17200 Unfair Competition Claim Rests On The Same Allegations as Renesas's Trade Secret Claim ........ 22

3. Renesas's Section 502(c) Claims Rest On The Same Nucleus Of Facts ........ 23

D. Renesas's Inclusion Of Doe Defendants 1-20 Is Improper ........ 24

E. The Court Should Decline To Exercise Supplemental Jurisdiction Over Renesas's State Law Claims ........ 24

IV. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alert Enter., Inc. v. Rana*,
2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) .................... 17, 23

*Alta Devices, Inc. v. LG Elecs., Inc.*,
343 F. Supp. 3d 868 (N.D. Cal. 2018).................... 13, 22

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019).................... 3, 10

*Apple Inc. v. Rivos, Inc.*,
2023 WL 5183034 (N.D. Cal. Aug. 11, 2023) .................... 14, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 6, 7

*Attia v. Google LLC*,
983 F.3d 420 (9th Cir. 2020) .................... 10

*Avago Techs. U.S. Inc. v. Nanoprecision Prods., Inc.*,
2017 WL 412524 (N.D. Cal. Jan. 31, 2017).................... 20, 21

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
2018 WL 2298500 (N.D. Cal. May 21, 2018).................... 13, 20

*Bell v. R.J. Reynolds Vapor Co.*,
2026 WL 915295 (N.D. Cal. Feb. 20, 2026) .................... 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................... 6, 7

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*,
2019 WL 11499334 (N.D. Cal. Nov. 13, 2019) .................... 17

*Carr v. AutoNation Inc.*,
2018 WL 288018 (E.D. Cal. Jan. 4, 2018) .................... 18

*CleanFish, LLC v. Sims*,
2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) .................... 7, 9, 12

*Dahlia v. Rodriguez*,
735 F.3d 1060 (9th Cir. 2013).................... 6

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010).................... 6

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,
2021 WL 6049906 (N.D. Cal. Dec. 21, 2021) .................... 20

*Farhang v. Indian Inst. of Tech., Kharagpur*,
2010 WL 2228936 (N.D. Cal. June 1, 2010) .................... 8, 17

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
2013 WL 3872950 (E.D. Cal. July 25, 2013) .......... 22

*Flexport, Inc., v. Freightmate AI Inc.*,
2025 WL 2399666 (N.D. Cal. July 10, 2025) .......... 16

*Gabriel Tech. Corp. v. Qualcomm Inc.*,
2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) .......... 20, 22

*Gatan, Inc. v. Nion Co.*,
2017 WL 1196819 (N.D. Cal. Mar. 31, 2017) .......... 10

*Gomez v. Serv. Emps. Int'l Union Loc. 87*,
2010 WL 4704407 (N.D. Cal. Nov. 12, 2010) .......... 24

*Google LLC v. Point Fin., Inc.*,
2026 WL 579462 (N.D. Cal. Mar. 2, 2026) .......... 8

*Graduation Sols. LLC v. Luya Enter.*,
2021 WL 2349346 (C.D. Cal. Mar. 31, 2021) .......... 22

*Henry Schein, Inc. v. Cook*,
2017 WL 783617 (N.D. Cal. Mar. 1, 2017) .......... 23

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) .......... 7, 19

*Joby Aero, Inc. v. Archer Aviation Inc.*,
2026 WL 1625376 (N.D. Cal. June 5, 2026) .......... 3, 8, 9, 23

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations Inc.*,
171 Cal. App. 4th 939 (2009) .......... 19

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 11

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .......... 19

*Lee v. Plummer*,
2005 WL 91380 (N.D. Cal. Jan. 17, 2005) .......... 24

*Les Concierges, Inc. v. Robeson*,
2009 WL 1138561 (N.D. Cal. Apr. 27, 2009) .......... 15

*Lifeline Food Co. v. Gilman Cheese Corp.*,
2015 WL 2357246 (N.D. Cal. May 15, 2015) .......... 20

*MedioStream, Inc. v. Microsoft Corp.*,
869 F. Supp. 2d 1095 (N.D. Cal. 2012) .......... 21

*Menzel v. Scholastic, Inc.*,
2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) .......... 16

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .......... 6, 16, 19

*Nat'l Specialty Pharmacy, LLC v. Padhye*,
734 F. Supp. 3d 922 (N.D. Cal. 2024) .......... 8, 9

*Navigation Holdings, LLC v. Molavi*,
445 F. Supp. 3d 69 (N.D. Cal. 2020) .......... 7, 17, 18

*NetApp, Inc. v. Nimble Storage, Inc.*,
41 F. Supp. 3d 816 (N.D. Cal. 2014) .......... *passim*

*P2i Ltd. v. Favored Tech. USA Corp.*,
2024 WL 4294652 (N.D. Cal. Sept. 24, 2024) .......... 9

*Palantir Techs., Inc. v. Abramowitz*,
2020 WL 9553151 (N.D. Cal. July 13, 2020) .......... 9-10

*Patino v. Franklin Credit Mgmt. Corp.*,
2017 WL 635316 (N.D. Cal. Feb. 16, 2017) .......... 24

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) .......... 11

*Pellerin v. Honeywell Int'l, Inc.*,
877 F. Supp. 2d 983 (S.D. Cal. 2012) .......... 15

*Power Integrations, Inc. v. De Lara*,
2020 WL 1467406 (S.D. Cal. Mar. 26, 2020) .......... 10

*PTC Therapeutics, Inc. v. AcureX Biosciences Corp.*,
2026 WL 350772 (N.D. Cal. Feb. 9, 2026) .......... 13, 16, 18

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
149 F.4th 1081 (9th Cir. 2025) .......... 2, 7, 10

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*,
2010 WL 145098 (N.D. Cal. Jan. 8, 2010) .......... 10

*RoadRunner Recycling, Inc. v. Recycle Track Sys. Inc.*,
2023 WL 8936690 (N.D. Cal. Dec. 26, 2023) .......... 10

*Roche Molecular Sys., Inc. v. Foresight Diagnostics Inc.*,
2025 WL 1959995 (N.D. Cal. July 16, 2025) .......... 18

*Sams v. Yahoo! Inc.*,
713 F.3d 1175 (9th Cir. 2013) .......... 11

*Sanchez-Martinez v. Freitas*,
2024 WL 4309277 (N.D. Cal. Sept. 26, 2024) .......... 2

*Santos v. Potter*,
2007 WL 926493 (N.D. Cal. Mar. 26, 2007) .......... 24

*Silvaco Data Sys. v. Intel Corp.*,
184 Cal. App. 4th 210 (2010) .......... 19

*Soc. Apps, LLC v. Zynga, Inc.*,
2012 WL 2203063 (N.D. Cal. June 14, 2012) .......... 9

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ... 6

*Top Agent Network, Inc. v. Zillow, Inc.*,
2015 WL 7709655 (N.D. Cal. Apr. 13, 2015) ... 8, 20

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ... 10-11

*Valeo v. NVIDIA Corp.*,
2025 WL 2505115 (N.D. Cal. Aug. 28, 2025) ... 15

*Vendavo, Inc. v. Price*,
2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ... 8, 9

*Waymo LLC v. Uber Techs., Inc.*,
256 F. Supp. 3d 1059 (N.D. Cal. 2017) ... 22

*Weitschner v. Monterey Pasta C*o.,
294 F. Supp. 2d 1102 (N.D. Cal. 2003) ... 2

*x.AI Corp. v. OpenAI, Inc.*,
821 F. Supp. 3d 1100 (N.D. Cal. 2026) ... 17

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*,
724 F. Supp. 3d 948 (N.D. Cal. 2024) ... 24

Rules and Statutes

Cal. Bus. & Pros. Code § 17200 ... 3, 19

Cal. Civ. Code § 3426.7 ... 19

Cal. Penal Code § 502(c) ... 3, 19, 23

Fed. R. Civ. P. 12(b)(6) ... *passim*

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on November 4, 2026, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Noël Wise at the United States District Court for the Northern District of California, San Jose Division, located at the San Jose Courthouse, Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, CA 95113, Defendants Navitas Semiconductor USA, Inc. ("Navitas"), Christopher Allexandre, and Felicia Cheng (collectively, "Defendants") will and hereby do move the Court to dismiss Plaintiffs' Renesas Electronics Corporation and Renesas Electronics America, Inc.'s (together, "Renesas") Complaint with prejudice for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

**STATEMENT OF RELIEF REQUESTED**

Defendants respectfully request an Order dismissing Counts One through Seven of the Complaint with prejudice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

This case is a response to the market choosing Navitas over Renesas for gallium nitride ("GaN") semiconductors. It is litigation instead of competition and the facts and timing speak for themselves.

More than a year after Mr. Allexandre left Renesas in June 2025, Renesas filed this lawsuit based primarily on Mr. Allexandre downloading two presentations to a USB drive that he presented while still employed at Renesas. There are no substantive allegations that these presentations were ever used by anyone at Navitas, including Mr. Allexandre, for any improper purpose whatsoever. And Mr. Allexandre's departure was no surprise to Renesas: he had informed them he was leaving over six months prior and stayed on, at Renesas's request, to ensure a smooth transition. The claims against Ms. Cheng are similarly weak. They are based on three related emails Ms. Cheng forwarded to herself while still employed by Renesas. And again, Renesas offers no substantive allegations that anything in these emails was used by anyone anywhere for any improper purpose. The entire foundation of Renesas's claim that anything was used improperly rests upon four words: "on information and belief." Worse, it turns out that many of the "top secret" schematics that Renesas

identifies as its trade secrets are publicly available on Renesas's website. They are top secret of nothing. The timing of this case removes any doubt: Renesas filed on the eve of Navitas's Q2 2026 earnings release. Not last year and not immediately after learning that Mr. Allexandre used a USB drive (in a perfectly proper manner). This case is not about trade secret theft.

On the competition front, Navitas has been a pioneer of GaN power devices since 2014. It was building GaN devices years before Renesas even entered the GaN market. While Renesas cites a press release to suggest that Navitas only collaborated with NVIDIA on high-power GaN after Mr. Allexandre joined Navitas, Renesas omits prior press releases showing that NVIDIA already selected Navitas to collaborate on high-power datacenter GaN solutions in ***May 2025***—well before Mr. Allexandre or Ms. Cheng joined Navitas.[1] That did not happen overnight: it was the result of years of development, all occurring before Mr. Allexandre or Ms. Cheng joined Navitas. In fact, Renesas only entered the GaN market in 2024 by acquiring a company called Transphorm that utilizes a fundamentally different GaN technology than Navitas, and that has struggled to gain traction in the market. It is no wonder that Renesas employees want to work at Navitas. And against this backdrop, it is no wonder that Renesas's claims are not plausible. As a result, the Complaint fails to state a claim for three reasons.

*First*, Renesas has not adequately pleaded that it owns a trade secret. A plaintiff must describe the trade secret with "sufficient particularity to separate it from matters of general knowledge" and "permit the defendant to ascertain . . . the boundaries within which the secret lies." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1087 (9th Cir. 2025). Renesas

---

[1] https://ir.navitassemi.com/news-releases/news-release-details/nvidia-selects-navitas-collaborate-next-generation-800-v-hvdc. While not necessary to resolve this motion, this Court routinely takes judicial notice of press releases "in order to prevent a plaintiff from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Weitschner v. Monterey Pasta C*o., 294 F. Supp. 2d 1102, 1109 (N.D. Cal. 2003). Moreover, this Court has taken judicial notice of press releases where, as here, the release "is functionally related" to press releases referenced in the complaint. *Bell v. R.J. Reynolds Vapor Co.*, 2026 WL 915295, at *2 (N.D. Cal. Feb. 20, 2026); *see also Sanchez-Martinez v. Freitas*, 2024 WL 4309277, at *3 (N.D. Cal. Sep. 26, 2024) ("The Court takes judicial notice of the news article to indicate what was in the public realm at the time."). Here, the Complaint expressly cites a June 3, 2026 press release about Navitas's collaboration with NVIDIA for high-power GaN (Compl. ¶ 45), but omits an earlier May 21, 2025 press release about the same collaboration with NVIDIA.

instead pleads "broad, categorical terms" that are "more descriptive of the types of information that generally may qualify as protectable trade secrets" than of any actual secret. *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1145 (N.D. Cal. 2019). It makes no attempt to separate its claimed secrets from its own publicly available slides, and disclaims any boundary, pleading that its categories are "hardly exhaustive." Compl. ¶¶ 81, 107.

*Second*, Renesas pleads no misappropriation. It alleges that Mr. Allexandre downloaded two presentations and Ms. Cheng emailed three threads to herself—both while employed at Renesas and performing their duties there. Compl. ¶¶ 76, 105. But it does not allege that either gave anything to Navitas, or that anyone at Navitas received, accessed, or used any Renesas information. On that point, Renesas offers only that, "[o]n information and belief," Navitas used its trade secrets because Navitas is developing high-power GaN. *Id.* ¶ 139. Two departures followed by continued product development is lawful competition, not misappropriation.

*Third*, the California Uniform Trade Secrets Act ("CUTSA") preempts Renesas's remaining claims—conversion (Counts Three and Four), unfair competition under Cal. Bus. & Prof. Code § 17200 (Count Seven), and Cal. Penal Code § 502(c) violations (Counts Five and Six)—each of which arises from the same "nucleus of facts" as the DTSA claim. *See Joby Aero, Inc. v. Archer Aviation Inc.*, 2026 WL 1625376, at *14 (N.D. Cal. June 5, 2026). Each count incorporates the trade secret allegations wholesale and fails under Rule 12(b)(6).

The Complaint should be dismissed.

## I. RELEVANT ALLEGATIONS IN RENESAS'S COMPLAINT

Navitas has been a leader in power devices formed from GaN since its founding in 2014. Compl. ¶ 42. Unlike traditional semiconductor devices formed from silicon, GaN devices operate at higher efficiency and lower overall cost. *Id.* ¶ 22. By 2017, industry publications reported that Navitas had already "made its breakthrough" with GaN integrated circuits, and by 2021 Navitas had solidified its position as a GaN pioneer with its "proprietary GaNFast power IC design."[2] By 2021, Navitas had captured roughly 30% of the global power GaN market, and by 2024 it supplied

[2] Compl. ¶ 47 (citing https://www.trendforce.com/news/2025/11/27/news-globalfoundries-moves-on-gan-tsmc-and-navitas-ties-position-u-s-as-new-gan-production-hub/); Compl. ¶ 47 (citing https://www.electronicsweekly.com/news/business/navitas-leads-gan-power-devices-2021-10/).

GaN power integrated circuits to all ten of the top ten global smartphone and laptop manufacturers. *Id.* ¶ 47. Given the continuing rise of AI infrastructure, Navitas has focused more on high-power AI datacenter and industrial markets and less on low power markets —a focusing it calls "Navitas 2.0." *Id.* ¶ 44. Nothing about that focus was secret or novel. And before Mr. Allexandre or Ms. Cheng joined Navitas, it was already widely reported in May 2025 that NVIDIA had selected Navitas for providing high-power GaN datacenter solutions. The Complaint itself recounts, from public sources, why GaN is displacing silicon in AI datacenters: it switches faster, loses less power, and tolerates far higher temperatures. *Id.* ¶¶ 19-24.

Renesas, by contrast, has historically focused on silicon-based semiconductor products, the very technology that GaN is replacing in datacenters. Renesas did not meaningfully enter the GaN market until 2024—a decade after Navitas—and it did so not by developing GaN technology of its own, but by acquiring another company, Transphorm, Inc. *Id.* ¶ 34. Transphorm's technology, now Renesas's, is a different technology to Navitas's.

### A. Mr. Allexandre's And Ms. Cheng's Departures From Renesas

Defendants Christopher Allexandre and Felicia Cheng are Navitas employees who formerly worked at Renesas Electronics America, Inc. ("REA"). Mr. Allexandre joined REA in April 2019 as a Senior Vice President and was promoted to a series of increasingly senior executive roles, becoming Senior Vice President and General Manager of the Power Business on January 1, 2024. Compl. ¶¶ 55, 61. In November 2024, Mr. Allexandre told Renesas's Chief Executive Officer that he intended to leave in 2025, allowing ample time for a smooth transition. *Id.* ¶¶ 67-68, 73. Mr. Allexandre remained in his role for eight more months and departed on June 30, 2025 "on very friendly terms"—over a year before Renesas filed this suit. *See id.* ¶¶ 67-68, 73. He became Chief Executive Officer of Navitas three months later, in September 2025. *Id.* ¶ 87.

Renesas alleges that, in June 2025, while he was still employed at Renesas, Mr. Allexandre downloaded two PowerPoint presentations onto two external USB drives. *Id.* ¶ 76.[3] The presentations themselves show that Mr. Allexandre thereafter presented them in June 2025—while

[3] Although the Complaint alleges that Mr. Allexandre downloaded "at least four files" to external USB devices, it does not allege that the two non-PowerPoint files contain any Renesas trade secret or confidential information. Compl. ¶ 76.

still employed by Renesas, and as part of his job responsibilities there. Renesas does not allege that Mr. Allexandre acquired, disclosed, or used those presentations (or any other Renesas confidential information or trade secrets) after he left Renesas. It alleges only that "[a]ny Renesas competitor (like Navitas) ***could*** use the information in these presentations" to advance its business, without alleging any facts that Mr. Allexandre in fact did so. *Id.* ¶ 83.

Ms. Cheng joined REA in February 2017, when Renesas acquired her prior employer, Intersil Corp. *Id.* ¶ 90. She was promoted to Quality Assurance Director in January 2022. On or about March 2, 2026, Ms. Cheng informed the Vice President of Quality, Stephen Lazuardi, that she would be resigning from REA, *id.* ¶ 99, and she departed on March 13, 2026.

Renesas alleges that, while she was still employed at Renesas, Ms. Cheng sent three "highly confidential Renesas email threads" to her personal Gmail account. *Id.* ¶ 105. As with Mr. Allexandre, Renesas does not allege that Ms. Cheng acquired any Renesas confidential information after her departure, or that she used or disseminated those three emails while employed at Navitas. It alleges only that, "[o]n information and belief, at Navitas, Cheng furthers' [*sic.*] the Navitas 2.0 vision by contributing to its GaN product lines." *Id.* ¶ 110.

**B. Renesas's Allegations Against Navitas**

Renesas pleads no facts about any acquisition, disclosure, or use by anyone at Navitas of the two presentations Mr. Allexandre downloaded or the three email chains Ms. Cheng forwarded. Its allegation instead is:

> On information and belief, Navitas misappropriated Renesas's trade secrets, including those contained within the materials misappropriated by Allexandre and Cheng, by using those trade secrets in furtherance of its "Navitas 2.0" plan that centers around developing and producing the same technology (high-voltage GaN power product) for Renesas's client, Nvidia, that is the subject of the information misappropriated by Allexandre and Cheng.

*Id.* ¶ 139. Renesas's theory, in other words, is that Navitas must have misappropriated Renesas's trade secrets because Navitas is "developing and producing" high-voltage GaN power products. That is not misappropriation. It is competition, and in a market that Navitas entered a

decade before Renesas did. Any suggestion that NVIDIA was Renesas's client exclusively is misleading at best: NVIDIA selected Navitas to collaborate on high-power datacenter GaN solutions in May 2025—***before*** Mr. Allexandre or Ms. Cheng joined Navitas.[4]

## II. LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper when the complaint either "(1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Allegations that do no more than assert a conclusion are entitled to no weight. The Court need not "accept as true allegations that contradict … matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013); *Twombly*, 550 U.S. at 555 (courts need not "accept as true a legal conclusion couched as a factual allegation"). Nor are "bare assertions … amount[ing] to nothing more than a 'formulaic recitation of the elements' … entitled to an assumption of truth," and a court need not credit allegations that "do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "'[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.'" *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 822 (N.D. Cal. 2014) (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)) (internal quotation marks omitted).

Where there are "two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' [their]

[4] *See supra* n.1.

favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "[S]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *Id.* (citing *Twombly*, 550 U.S. at 554). A complaint that "pleads facts that are merely consistent with a defendant's liability … stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

## III. ARGUMENT

The facts alleged in the Complaint establish, at most, that two Renesas employees handled Renesas documents while they were still employed at Renesas and performing their job responsibilities there, and that Navitas thereafter continued developing its high-power GaN technology. Under settled law, such allegations do not plausibly show that Renesas owns any identified trade secret, much less that Navitas, Mr. Allexandre, or Ms. Cheng misappropriated any. To state a claim for trade secret misappropriation, a plaintiff must plausibly allege "(1) that it is the owner of a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that it was damaged by the defendant's actions." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 78 (N.D. Cal. 2020). Renesas's Complaint fails on each of those elements, and its DTSA claim against Navitas, Mr. Allexandre, and Ms. Cheng should be dismissed. And Renesas's remaining claims that are the subject of this motion are preempted because they lack any cognizable legal theory independent of the trade secret claim.

### A. Renesas Has Not Identified Any Protectable Trade Secret

Renesas's DTSA claim fails at the threshold. "[P]ossession of a trade secret [is] the first element of any DTSA claim." *Quintara Biosciences, Inc.*, 149 F.4th at 1087. "On a motion to dismiss, the burden is on the Plaintiff to identify protectable trade secrets and '[show] that they exist.'" *CleanFish, LLC v. Sims*, 2020 WL 4732192, at *3 (N.D. Cal. Aug. 14, 2020). Renesas does not do so, in three independent respects. It describes only broad categories of subjects rather than the specific matter it claims is secret. It makes no attempt to distinguish its claimed secrets from information that appears on Renesas's own publicly available documents. And it expressly

disclaims any limit on the categories it pleads, reserving the right to define its trade secrets later. Each failure requires dismissal; together, they leave Defendants (and the Court) unable to determine the appropriate scope of discovery and what Renesas contends its trade secrets are.

**1. Renesas Identifies Categories Of Information, Not Trade Secrets**

To adequately plead a protectable trade secret, a plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Farhang v. Indian Inst. of Tech., Kharagpur*, 2010 WL 2228936, at *13 (N.D. Cal. June 1, 2010) (citation omitted). That requirement is not a formality: it permits an "item-by-item determination of what is and is not protectable," and it gives the defendant notice of what it is accused of taking. *Top Agent Network, Inc. v. Zillow, Inc.*, 2015 WL 7709655, at *4 (N.D. Cal. Apr. 13, 2015). A plaintiff therefore cannot rely on "catchall phrases," or on descriptions of the "*kinds* of trade secrets that may be at issue." *See Joby*, 2026 WL 1625376, at *8-9 (internal citation omitted); *see also Nat'l Specialty Pharmacy, LLC v. Padhye*, 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024) (emphasis in original).

Renesas's Complaint falls short of that standard. Renesas identifies five documents that the Defendants allegedly misappropriated: two PowerPoint presentations and three emails. Compl. ¶¶ 76, 105. It does not point to a particular specification, formula, schematic, design parameter, or price within any document as Renesas's alleged trade secret. It offers instead a list of broad subject-matter labels as purportedly encompassed by those documents: "product roadmaps," "product specifications," "secret internal cost structures," "Renesas supply chain," "testing data for its products," "numbers of parts," "testing challenges," and "operational challenges." *Id.* ¶¶ 78, 80, 106. That fails as a matter of law. *Google LLC v. Point Fin., Inc.*, 2026 WL 579462, at *3 (N.D. Cal. Mar. 2, 2026) ("General allegations identifying the 'purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally may qualify as protectible trade secrets are insufficient to state a claim.'"); *see also Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (rejecting attempt to plead trade secrets in "broad, categorical terms, more descriptive of the types of information that generally may qualify

as protectable trade secrets . . ."); *P2i Ltd. v. Favored Tech USA Corp.*, 2024 WL 4294652, at *4 (N.D. Cal. Sept. 24, 2024) (dismissing trade secret claim alleging theft of "sweeping categories of trade secrets" as "too high-level" and "too general"); *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012) ("A description of [a] category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret.").

The complaints dismissed in *Joby* and *Padhye* are instructive here. In *Joby*, the Court dismissed several DTSA misappropriation claims because the plaintiff relied on "catchall" phrases such as "'commercial strategy development, regulatory strategies, and infrastructure strategy' [and] 'technical information about Joby's aircraft and operations.'" *Joby*, 2026 WL 1625376, at *9. The Court reached the same result in *Padhye*, where the plaintiff's identification of "'vendor and partner information, proprietary formulas, business processes, pricing strategies, pricing data, marketing methods…and more,'" was deficient because it did not "clearly refer to tangible trade secret material as required." 734 F. Supp. 3d at 929. Renesas's allegations here fare no better: "how Renesas technologically matches particular customer specifications," "Renesas's 2-3 year top-secret Roadmap," "product information [that] includes Renesas specifications," "Renesas's secret internal cost structures," "Renesas's operational challenges," and "other Renesas confidential information and trade secrets" similarly fail to identify any "tangible trade secret." *See, e.g.*, Compl. ¶¶ 78-79. Missing entirely is any "specific algorithm[]," or the "specific slides where [business and product technical development] strategy was outlined." *Joby*, 2026 WL 1625376, at *9.

In short, the burden of identification rests on Renesas now, at the pleading stage, *CleanFish*, 2020 WL 4732192, at *3, and Renesas may not use discovery into a direct competitor's GaN business to identify after the fact what Renesas's trade secrets are. *See Power Integrations, Inc. v. De Lara*, 2020 WL 1467406, at *18 (S.D. Cal. Mar. 26, 2020) (dismissing complaint because alleging "future product plans and designs" was "insufficient to place Defendants on notice of the trade secret(s) in dispute"); *Vendavo*, 2018 WL 1456697, at *3-4 ("ideas and plans for product enhancements" were "broad, categorical terms"); *see also Palantir Techs., Inc. v. Abramowitz*,

2020 WL 9553151, at *18 (N.D. Cal. July 13, 2020) (dismissing CUTSA claim where identification of trade secrets as "'proprietary' or 'confidential information' related to its Healthcare, Cyber, or Natural Resources Technology" did not "give the Court or Defendants notice of the boundaries of this case").

**2. Renesas Does Not Separate Its Claimed Secrets From Public Information**

The Complaint fails for the further reason that Renesas must identify its alleged trade secrets by "separating [them] from matters of general knowledge in the trade or of special knowledge of those persons…skilled in the trade." *Quintara*, 149 F.4th at 1087; *see also AlterG*, 388 F. Supp. at 1144. Public disclosure "extinguishes … [that] information's trade secret status," *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020), yet nothing in the Complaint permits the Court to determine which information within Renesas's categories Renesas claims as secret and which is already in the public domain.[5]

The deficiency is acute here because the presentations that Mr. Allexandre allegedly misappropriated—described by Renesas as "top secret"—indisputably contain public information. A side-by-side comparison of publicly available materials against Renesas's own slides shows that certain of the assertedly "confidential" information is not confidential at all. The slides from "GaN for Infrastructure," which Renesas alleges contains "highly business-critical Renesas trade secrets," are publicly available, as reproduced in Figure 1 below.[6] *See* Compl. ¶ 80; *compare* Dkt. No. 18

[5] While not necessary to decide this motion, the Court may "take judicial notice of matters of public record." *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 2010 WL 145098, at *4 (N.D. Cal. Jan. 8, 2010) ("A court deciding a Rule 12(b)(6) motion can take judicial notice of matters of public record."). Courts in the Ninth Circuit routinely hold that documents on company websites are subject to judicial notice. *See RoadRunner Recycling, Inc. v. Recycle Track Sys. Inc.*, 2023 WL 8936690, at *3 (N.D. Cal. Dec. 26, 2023) (finding a trade secret plaintiff's webpage, "containing [plaintiff's] own public disclosures, [ ] an appropriate subject of judicial notice of the public availability of this information"); *Gatan, Inc. v. Nion Co.*, 2017 WL 1196819 at *9 (N.D. Cal. Mar. 31, 2017) (taking judicial notice of publicly available pages from plaintiff's website in a trade secrets case). Here, the information that Plaintiffs allege is "top secret" was published to Plaintiffs' and NVIDIA's websites.

[6] When ruling on a Rule 12(b)(6) motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A document may be

at 6 *with* Declaration of Thomas Yeh In Support of Motion to Dismiss ("Yeh Decl."), Ex. A, at 6; *compare* Dkt. No. 18 at 7 *with* Yeh Decl., Ex. A at 7.

**<u>Figure 1</u>**

| **Renesas's Claimed Trade Secret** | **PUBLIC Publication** |
| --- | --- |
| [redacted] |   |
| Dkt. No. 18 at 6 | Yeh Decl., Ex. A at 6 |
| [redacted] |   |
| Dkt. No. 18 at 7 | Yeh Decl., Ex. A at 7 |

The same is true of the second presentation, "PWR Technology For Datacenters: High Voltage Architecture In Datacenters"—which the Complaint describes as containing "highly confidential business-critical Renesas trade secrets"—are publicly available, as reproduced in Figure 2 below. Compl. ¶ 77; *compare* Dkt. No. 16-12 at 3 *with* Yeh Decl., Ex. A at 3; *compare* Dkt. No. 16-12 at 5 *with* Yeh Decl., Ex. A at 6; *compare* Dkt. No. 16-12 at 8 *with* Yeh Decl., Ex. B at Figures 2-3.

---

incorporated by reference if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. *Ritchie*, 342 F.3d at 907*; Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). The document's authenticity must not be contested and the plaintiff's complaint must necessarily rely on it. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013)*; Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). Here, Plaintiffs reference these presentations throughout their complaint, as these presentations are the basis of all Plaintiffs' claims against Navitas and Mr. Allexandre.

**<u>Figure 2</u>**

| **Renesas's Claimed Trade Secret** | **PUBLIC Publication** |
| --- | --- |
| [redacted]<br>Dkt. No 16-12 at 3 | <br>Yeh Decl., Ex. A at 3 |
| [redacted]<br>Dkt. No 16-12 at 5 | <br>Yeh Decl., Ex. A at 6 |
| [redacted]<br>Dkt. No. 16-12 at 8 | <br>Yeh Decl., Ex. B at Figures 2-3 |

These comparisons confirm Renesas's pleading cannot survive dismissal. Renesas alleges that entire presentations are trade secret, and those presentations demonstrably contain public material. A plaintiff that combines public and non-public material in a single undifferentiated category has not identified a trade secret at all, because neither the Court nor the defendant can perform the required "item-by-item determination of what is and is not protectable." *CleanFish*, 2020 WL 4732192, at *3. Renesas alone knows what its trade secrets purportedly are within the documents identified in the Complaint, and Renesas alone can say which portions of them it claims as secret. Having declined to do so, Defendants are not required to guess.

**3. Renesas Describes Its Alleged Trade Secrets In Deliberately Unbounded Terms**

Renesas compounds the defects of its trade secret identification by disclaiming any boundary at all. Even as to the information it does describe, Renesas pleads that its recitations are "hardly exhaustive lists" and "not an exhaustive list," Compl. ¶¶ 81, 107, and it introduces its categories with open-ended qualifiers such as "including" and "inter alia," *id.* ¶¶ 80, 106. That drafting reserves to Renesas the right to define its trade secrets later—after it has seen Navitas's products and documents—and it is contrary to law. *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (dismissing complaint where "a number of the categories are preceded by the phrases 'such files included' and 'such as,' thereby further expanding the scope of the allegations in which the categories are contained"). Because Renesas has not identified any trade secret that it owns, its DTSA claim fails at the first element, and the Court need go no further.

**B. Renesas Does Not Allege That Mr. Allexandre, Ms. Cheng, or Navitas Improperly Acquired, Used, Or Disclosed Renesas's Alleged Trade Secrets**

To state a DTSA claim, a plaintiff must plausibly allege "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *PTC Therapeutics, Inc. v. AcureX Biosciences Corp.*, 2026 WL 350772, at *7-8 (N.D. Cal. Feb. 9, 2026) (citing *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020)). The DTSA defines "misappropriation" as either "(1) the [a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means; or (2) the [d]isclosure or use of a trade secret of another without express or implied consent." *Id.* (citing *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018)) (quotation marks omitted). Renesas pleads neither. As shown in Section III.A, *supra*, Renesas has not identified its trade secrets with sufficient particularity, which defeats its misappropriation claim at the outset. But even assuming Renesas had identified a protectable trade secret, the Complaint pleads no misappropriation of it.

**1. Mr. Allexandre and Ms. Cheng**

Renesas alleges that Mr. Allexandre and Ms. Cheng "acquired knowledge and custody of Renesas trade secrets" by, respectively, downloading presentations onto USB drives and emailing presentations and emails to herself—*in each case while they were still employed by Renesas and authorized to access those materials*. Compl. ¶ 136. Mr. Allexandre himself was to present the two downloaded decks in June 2025 as part of his job responsibilities. An employee's handling of his own employer's documents in the course of his duties is not the "acquisition of a trade secret … by improper means" that the statute requires. Regardless, mere possession is not misuse: "[t]he fact that [a former employee] is in mere possession of [a former employer's information] does not support an inference that he has disclosed or used the information … in his current … role" at the new employer. *Apple Inc. v. Rivos, Inc.*, 2023 WL 5183034, at *7 (N.D. Cal. Aug. 11, 2023). Renesas's remaining allegations against Mr. Allexandre and Ms. Cheng fail as well.

**Mr. Allexandre:** Renesas alleges that after joining Navitas, Mr. Allexandre publicly announced "Navitas 2.0," a "strategic[] repositioning" toward power products, and specifically toward "high-power GaN and SiC technologies in AI data centers, energy and grid infrastructure, performance computing and industrial electrification." *Id.* ¶ 88. From that, Renesas asserts that the "technologies and concepts at the center [of] Allexandre's 'Navitas 2.0' are the subject of the two PowerPoint presentations that Allexandre secretly stole from Renesas on a USB drive in the days before leaving REA to go lead Navitas." *Id.* But those allegations establish only that Mr. Allexandre's publicly announced strategy concerns high-power GaN and that Renesas also develops high-power GaN. Indeed, Mr. Allexandre's statement about Navitas 2.0 is nothing more than a list of end markets—"AI data centers, energy and grid infrastructure, performance computing and industrial electrification"—none of which is secret (or new to Navitas). Nor is the focus on high-power GaN indicative of misappropriation: the Complaint devotes its opening factual section to the same market shift, sourced entirely to public materials. *Id.* ¶¶ 19-26. Renesas even pleads the publicly stated reason for the repositioning, quoting Mr. Allexandre's observation that he was "increasingly seeing AI as a catalyst that is driving momentum and broadening adoption of high-

power solutions across all of our target end markets." *Id.* ¶ 88. A publicly recognized market trend is not evidence of misappropriation, or even a trade secret.

**Ms. Cheng:** As to Ms. Cheng, Renesas alleges even less: that "[o]n information and belief, at Navitas, Cheng furthers' the Navitas 2.0 vision by contributing to its GaN product lines." *Id.* ¶ 110. In other words, Renesas's allegation is that Ms. Cheng's work on GaN is somehow evidence of misappropriation. That is the inevitable disclosure doctrine, and this Court does not recognize it. *See Valeo v. NVIDIA Corp.*, 2025 WL 2505115, at *7 (N.D. Cal. Aug. 28, 2025) (rejecting inference of "inevitable disclosure" even as to an employee who took a prior employer's document). Nor do Renesas's allegations about Ms. Cheng's final days at Renesas supply what is missing. Renesas devotes five paragraphs to a March 5, 2026 meeting at NVIDIA that Ms. Cheng allegedly attended without her supervisor's permission, at which she told those present that she was resigning. *Id.* ¶¶ 100-04. Renesas does not allege that she disclosed a trade secret at that meeting—or anything at all beyond her own resignation. An employee's failure to follow her employer's internal protocol for announcing a departure, even if true, may be a personnel matter; it is not a plausible allegation of trade secret misappropriation.

As a matter of law, both individual Defendants were free to take their new jobs in the same technical field, and their continued work on GaN supports no inference of misappropriation. Indeed, in *Les Concierges, Inc. v. Robeson*, this Court held that "misappropriation cannot, as a matter of California law, be inferred from the fact [defendant], upon voluntarily terminating his employment with [plaintiff], immediately began working for a direct competitor and appears to be performing for his new employer the same or similar job duties he performed while employed by [plaintiff]." 2009 WL 1138561, at *2 (N.D. Cal. Apr. 27, 2009). *See also Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012) (rejecting the "inevitable disclosure" doctrine that "a former employee's new employment will inevitably lead [him] to rely on [his former employer's] trade secrets"). The same result follows here; the trade secret misappropriation claim should be dismissed against Mr. Allexandre and Ms. Cheng.

**2. Navitas**

Renesas's claim against Navitas fails as well, for three independent reasons: it pleads no acquisition, use, or disclosure by Navitas; it pleads no facts showing that Navitas knew anything it received was improperly acquired; and it pleads no resulting damage. Because Renesas does not allege that Navitas acquired anything itself, its only path to liability runs through use or disclosure by Mr. Allexandre or Ms. Cheng after they arrived at Navitas. *See Flexport, Inc., v. Freightmate AI Inc.*, 2025 WL 2399666, at *4 (N.D. Cal. July 10, 2025). Renesas pleads neither.

*First*, Renesas's allegations that Defendants "engaged in misappropriation of trade secrets by acquiring, using and disclosing" Renesas information, and "misappropriated the above-described trade secrets by acquiring, disclosing and/or utilizing" them, Compl. ¶¶ 131, 140, are formulaic recitations of the statutory elements not entitled to acceptance as true for purposes of a motion to dismiss. *Moss*, 572 F.3d at 969. All that remains is Renesas's allegation, made "on information and belief," that Navitas misappropriated its trade secrets "in furtherance of its 'Navitas 2.0' plan" because that plan "centers around developing and producing the same technology (high-voltage GaN power product) for Renesas's client, Nvidia, that is the subject of the information misappropriated by Allexandre and Cheng." *Id.* ¶ 139.[7]

That allegation is not enough. Renesas identifies no product feature, no document, no communication, no meeting, and no person at Navitas who received or used any part of the five documents at issue—let alone any alleged trade secrets in those documents. Renesas alleges only that Mr. Allexandre saved two presentations to a USB drive in June 2025 and that Ms. Cheng forwarded three email threads to her personal account in March 2026—in each case while still employed at Renesas. *Id.* ¶¶ 76, 105. What became of those materials, the Complaint does not say.

*Alert Enterprise* and *x.AI* confirm that such allegations fail as a matter of law. In *Alert Enterprise*, the plaintiff alleged that its former employee had conspired with a competitor,

[7] The "information and belief" qualifier on which that allegation rests cannot satisfy Renesas's pleading burden. Such allegations must still be "based on factual information that makes the inference of culpability plausible." *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018). "Conclusory allegations based on impermissible inferences" do not plead misappropriation under the DTSA. *PTC Therapeutics*, 2026 WL 350772, at *7-8. Renesas offers no factual information at all—only the inference it asks the Court to draw.

downloaded thousands of files containing trade secrets, erased the evidence, and never returned the files before starting at the competitor. *Alert Enter., Inc. v. Rana*, 2023 WL 2541353, at *1, *3 (N.D. Cal. Mar. 16, 2023). This Court nonetheless dismissed the claim against the competitor, holding those allegations insufficient to "support a plausible inference [the employee] took, used, or disclosed [plaintiff's] trade secrets after he became" the competitor's employee. *Id.* at *3. So too in *x.AI Corp. v. OpenAI, Inc.*, where eight of the plaintiff's former employees left for a competitor and allegedly "stole [plaintiff's] source code during their departure at a time when they were recruiting with [defendant's] recruiter." 821 F. Supp. 3d 1100, 1103-04 (N.D. Cal. 2026). This Court dismissed the DTSA claim, holding that former employees having "t[aken] [plaintiff's] confidential information at around the same time and before leaving to work for [defendant]" does not, "without more," plead misappropriation against the new employer. *Id.* at 1108.

Renesas pleads considerably less than the plaintiffs in *Alert Enterprise* and *x.AI*: no improper recruiter contact, no coordination with Navitas, and no direction from Navitas. In fact, the Complaint is devoid of any factual allegations about ***Navitas's*** involvement in the alleged misappropriation, and this Court has repeatedly dismissed DTSA claims that fail to differentiate a corporate defendant's conduct from that of its employees. *See Navigation Holdings*, 445 F. Supp. 3d at 79 (dismissing DTSA claim against corporate defendants where the complaint based its "trade secret misappropriation claims on [an employee's] conduct, without differentiating what each specific [corporate] Defendant is alleged to have done"); *Farhang*, 2010 WL 2228936, at *15 (nonspecific allegation "that defendants disclosed plaintiffs' trade secrets without their express or implied consent" insufficient to avoid dismissal); *Apple*, 2023 WL 5183034, at *8 (dismissing claim against corporate defendant where the complaint "notably stops short of alleging any conduct by Rivos itself to induce the breach of Apple employees' confidentiality obligations or otherwise acquire Apple confidential information through other improper means"). What remains is that Navitas hired two executives who had access to Renesas information, but "[m]erely hiring a competitor's former employees who had access to confidential information cannot demonstrate misappropriation on its own." *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, 2019 WL 11499334, at *5 (N.D. Cal. Nov. 13, 2019).

*Second*, even if Renesas adequately plead any acquisition of its materials by Navitas, which it has not, Renesas pleads no facts showing that Navitas knew or had reason to know that any such unidentified and unspecified materials it purportedly received was a trade secret acquired by improper means. Where, as here, a plaintiff alleges indirect misappropriation—that the defendant acquired the alleged secrets "indirectly from someone other than plaintiff"—it must plead facts showing that the defendant "knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it." *Navigation Holdings*, 445 F. Supp. 3d at 79 (citation omitted). The Complaint says nothing about Navitas's actual or constructive knowledge. It does not identify anyone at Navitas who is alleged to have learned that Mr. Allexandre or Ms. Cheng took Renesas materials, or to have had reason to suspect it. *See Carr v. AutoNation Inc.*, 2018 WL 288018, at *3 (E.D. Cal. Jan. 4, 2018) (dismissing claim for failure to allege "what specifically would have caused [defendant] to know or have reason to know" that another's possession of the material "was wrongful"); *Roche Molecular Sys., Inc. v. Foresight Diagnostics Inc.*, 2025 WL 1959995, at *2 (N.D. Cal. July 16, 2025) (knowledge allegations "too conclusory").

*Third*, Renesas's failure to plead misappropriation defeats the third element of its DTSA claim against every Defendant, which requires that the misappropriation "caused or threatened damage to the plaintiff." *PTC Therapeutics*, 2026 WL 350772, at *7-8. Absent any pleaded use or disclosure, there is no injury and nothing threatened. The Complaint's harm allegations confirm the deficiency: Renesas pleads that Defendants conduct "resulted in the *potential* loss of goodwill," that it "*may cause* further harm to Plaintiffs' reputations," and that Renesas "*may lose* prospective advantageous relationships." Compl. ¶¶ 142-44. Allegations of what might happen are not allegations of what did. The one paragraph pleading harm in the past tense asserts only that Renesas "has suffered the loss of Renesas confidential trade secret information"—which restates the alleged taking rather than identifying any consequence of it. *Id.* ¶ 141. That leaves the incantation that Renesas "has sustained damages in an amount to be proven at trial," *id.* ¶ 145, which is a "formulaic

recitation of the elements," not a factual allegation entitled to an assumption of truth. *Moss*, 572 F.3d at 969.

If anything, the chronology here renders Renesas's theory *im*plausible. Navitas has built GaN power devices since 2014 and held roughly 30% of the global power GaN market by 2021—years before either employee departed Renesas. Compl. ¶¶ 42, 47. All Renesas offers to bridge that gap is that Navitas allegedly only moved toward high-power GaN after Mr. Allexandre and Ms. Cheng arrived. That is incorrect, but even taking Renesas's allegations at face value, so was the rest of the industry, as the Complaint itself documents from public sources. *See id.* ¶¶ 19-26, 43-45. Where the pleaded facts are at most "merely consistent with" misappropriation and equally consistent with lawful competition, Renesas must plead "facts tending to exclude the possibility that the alternative explanation is true." *In re Century Aluminum*, 729 F.3d at 1108. It has pleaded none here.

The DTSA claim should be dismissed.

### C. CUTSA Preempts Renesas's Conversion, Unfair Competition, And Section 502(c) Claims

Renesas's remaining claims all arise out of the same allegations it pleads in support of its DTSA claim. Each is therefore preempted by CUTSA and should be dismissed: the common law conversion claims (Counts Three and Four), the California Business and Professions Code § 17200 unfair competition claim (Count Seven), and the California Penal Code § 502(c) claims (Counts Five and Six).

CUTSA "provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'" *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (quoting Cal. Civ. Code § 3426.7(a)-(b)), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). It accordingly "preempt[s] claims based on the same nucleus of facts as trade secret misappropriation." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 962 (2009); *see* Cal. Civ. Code § 3426.7. The analysis "focuses on whether other claims are not more than a restatement of the same operative facts supporting trade secret

misappropriation," and "[i]f there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *Top Agent*, 2015 WL 7709655, at *6 (citations omitted). Preemption "extends to claims based on the misappropriation of confidential and proprietary information, regardless whether it qualifies as a 'trade secret,'" *Avago Techs. U.S. Inc. v. Nanoprecision Prods., Inc.*, 2017 WL 412524, at *7 (N.D. Cal. Jan. 31, 2017), and it applies even where no CUTSA claim is pleaded—otherwise a plaintiff could "defeat preemption by … intentionally omit[ting] CUTSA in favor of other claims," *NetApp*, 41 F. Supp. 3d at 840.

Those principles control here. The gravamen of the wrongful conduct alleged in each of Renesas's remaining claims is the gravamen of its trade secret claim: that Mr. Allexandre and Ms. Cheng allegedly took Renesas materials as they departed, and that Navitas thereafter used them. *See Gabriel Tech. Corp. v. Qualcomm Inc.*, 2009 WL 3326631, at *12 (S.D. Cal. Sept. 3, 2009) (dismissing claim where "the gravamen of the wrongful conduct is the same"). Renesas confirms as much on the face of its own pleading. Each count at issue opens by incorporating every preceding allegation, including all of the trade secret allegations, "as if fully set forth herein." Compl. ¶¶ 157, 162, 167, 176, 185. That alone supports preemption. *See Lifeline Food Co. v. Gilman Cheese Corp.*, 2015 WL 2357246, at *4 (N.D. Cal. May 15, 2015) (preemption applies where a plaintiff "supports its [claims] by incorporating the entirety of the allegations made in support of its misappropriation of trade secrets claim").

**1. Renesas's Conversion Claims Rest On The Same Allegations As Its Trade Secret Claim**

Courts in this District routinely dismiss conversion claims as preempted where they rest on the same nucleus of facts as a trade secret claim. *See Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2021 WL 6049906, at *4 (N.D. Cal. Dec. 21, 2021) (dismissing conversion claim that "relies on the same misappropriation of proprietary information as the trade secret claim"); *Becton, Dickinson & Co.*, 2018 WL 2298500, at *7 (same as to alleged conversion of "removable media devices, papers, and/or notebooks containing confidential and proprietary information"); *Avago*, 2017 WL 412524, at *7. The controlling principle is that "if the only

property identified in the complaint is confidential or proprietary information, and the only basis for any property right is trade secrets law, then a conversion claim predicated on the theft of that property is preempted." *NetApp*, 41 F. Supp. 3d at 840.

Renesas does not allege a single fact outside those pleaded in support of its trade secret claim to support its conversion claims against Mr. Allexandre and Ms. Cheng. Its entire conversion theory rests on one conclusory paragraph, repeated verbatim as to each defendant:

> "As a direct and proximate cause of [Allexandre's/Cheng's] taking of Plaintiffs' property, [Allexandre/Cheng], and, on information and belief, Navitas have been unjustly enriched and Plaintiffs have sustained damages in an amount to be proven at trial. Plaintiffs have also suffered irreparable harm as a result of [Allexandre's/Cheng's] activities and will continue to suffer irreparable injury that cannot be adequately remedied at law unless [Allexandre/Cheng], and all other persons acting in concert with [Allexandre/Cheng], are enjoined from engaging in any further such acts of conversion."

Compl. ¶¶ 160, 165.

Beyond that paragraph, Renesas's only support for its claim that Mr. Allexandre and Ms. Cheng "stole" any Renesas property is the same set of allegations underlying its trade secret claim. *Compare* Compl. ¶¶ 75-83, 105-107 *with id.* ¶¶ 137-38. In *Avago*, the plaintiff did not identify "in its conversion claim…any specific property that has value apart from the confidential information it contains," which rendered the claim preempted. 2017 WL 412524, at *7. The court cautioned that a plaintiff "may not evade CUTSA preemption simply by alleging that the confidential information at issue was…embodied in a [different format] where there are no allegations suggesting that the [different format] had any value apart from the confidential information disclosed in it." *Id.* And in *MedioStream*, dismissal was warranted where the plaintiff made no "attempt to distinguish [the property stolen under the conversion claim] from the trade secret material identified in the [complaint]," and there was "clear uniformity between" the two sets of claims on the face of the complaint. *See MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1116 (N.D. Cal. 2012). That describes this Complaint. Renesas identifies no property beyond

the presentations and emails themselves, and it does not allege that those documents—or the USB drives and Gmail account through which they moved—had any value apart from the information they contained. Counts Three and Four are preempted.

### 2. Renesas's Section 17200 Unfair Competition Claim Rests On The Same Allegations as Renesas's Trade Secret Claim

In addition to common law claims, CUTSA also preempts statutory claims if they "rel[y] on the same facts as the [trade secret] misappropriation claim." *Gabriel*, 2009 WL 3326631 at *13 (citation omitted). Specifically, if a plaintiff's unfair competition claim under Section 17200 "rests squarely on its factual allegations of trade secret misappropriation," CUTSA preempts the Section 17200 claim. *Id.*; *see also NetApp*, 41 F. Supp. 3d at 839.

As with its conversion claims, Renesas's statutory unfair competition claim arises from the same facts as its trade secret claim. Renesas alleges only that "Defendants' actions, as described above, are unfair, unlawful, and fraudulent," with no factual support beyond what it pleaded for its DTSA claim. Compl. ¶ 187. Nor does Renesas identify which statutory prong it invokes or the source of law supplying the asserted unlawfulness. CUTSA preempts Section 17200 claims in these circumstances. *See, e.g., Alta*, 343 F. Supp. 3d at 888; *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1064 (N.D. Cal. 2017); *Graduation Sols. LLC v. Luya Enter.*, 2021 WL 2349346, at *5 (C.D. Cal. Mar. 31, 2021). In *NetApp*, the plaintiff's unfair competition claim rested solely on its assertion that the defendants' conduct "'is "unlawful" because, among other reasons, they violated the Computer Fraud and Abuse Act and committed trespass to chattels.'" 41 F. Supp. 3d at 839. The court held that the plaintiff "ha[d] not alleged any misconduct by [defendants] with respect to [unfair competition] other than the trade secret information." Id. at 840. So too in *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, where the plaintiffs alleged only that the defendants would "commit or attempt to commit…acts of unfair and illegal competition…by using [p]laintiffs' proprietary information, including confidential information and trade secrets"—conduct that was "the same conduct that gives rise to [p]laintiffs' claim for trade secret misappropriation." 2013 WL 3872950, at *10 (E.D. Cal. July 25, 2013). Renesas pleads no fact specific to its Section 17200

claim that is distinguishable from its trade secret claim. Count Seven is preempted and should be dismissed.

**3. Renesas's Section 502(c) Claims Rest On The Same Nucleus Of Facts**

California Penal Code Section 502 "allows the owner of a computer system to bring a civil action 'against the violator for compensatory damages and injunctive relief or other equitable relief.'" *Alert*, 2023 WL 2541353, at *6 (citation omitted). As with civil conversion and unfair competition claims, CUTSA may also preempt a Section 502(c) violation claim where such a claim is "based on the same nucleus of facts as trade secret misappropriation." *Id*.

Renesas pleads no facts specific to its Section 502(c) claims that are not "based on the same nucleus of facts" as its trade secret claim. It describes Mr. Allexandre's and Ms. Cheng's responsibilities and confidentiality obligations under their contractual agreements and Renesas policies, and alleges that their "knowing conduct in downloading and emailing Renesas's confidential materials and failing to return such information at the end of [their] employment with [Renesas] was not within the scope of [their] lawful employment." *See* Compl. ¶¶ 169, 171, 178, 180. That is the identical conduct on which the trade secret claim rests. *Compare* Compl. ¶¶ 137-38 *with id.* ¶¶ 169, 171, 178, 180. So it was in *Alert*, where the core of both the misappropriation claim and the Section 502(c) claim was that the defendant "access[ed] and download[ed] confidential information" or "accessed and delet[ed] confidential information." *Alert*, 2023 WL 2541353, at *6. This Court has applied that rule consistently, including this year. *See Joby*, 2026 WL 1625376, at *14-15 (CUTSA preempted a § 502(c) claim premised on the defendant's having "altered [plaintiff's] Google Drive settings for various files…in order to wrongfully control [plaintiff's] information even after [defendant] left [plaintiff's] employ," which was "based on the same nucleus of facts as misappropriation of trade secrets"); *see also Henry Schein, Inc. v. Cook*, 2017 WL 783617, at *4 (N.D. Cal. Mar. 1, 2017) (dismissing § 502(c) claims that "cannot survive after the trade secrets facts are removed"). Counts Five and Six cannot survive that test either, and should be dismissed.

**D. Renesas's Inclusion Of Doe Defendants 1-20 Is Improper**

Renesas's trade secret misappropriation and unfair competition claims are also asserted against defendants "Does 1-20," (the "Doe Defendants"). The Ninth Circuit generally disfavors the inclusion of Doe Defendants, particularly where allegations against such defendants are "vague and conclusory, and do not state a plausible claim against the Doe defendants." *X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 987 (N.D. Cal. 2024). The allegations against the Doe Defendants here are worse than "vague and conclusory"—they are nonexistent. California law unanimously supports dismissal of empty claims against Doe defendants. *See Gomez v. Serv. Emps. Int'l Union Loc. 87*, 2010 WL 4704407, at *6 (N.D. Cal. Nov. 12, 2010); *see also Santos v. Potter*, 2007 WL 926493, at *2-3 (N.D. Cal. Mar. 26, 2007); *see also Lee v. Plummer*, 2005 WL 91380, at *5-6 (N.D. Cal. Jan. 17, 2005).

**E. The Court Should Decline To Exercise Supplemental Jurisdiction Over Renesas's State Law Claims**

Without Renesas's DTSA claim, Renesas's state law claims—Counts Two through Seven—lack an independent basis for jurisdiction because there is no diversity of citizenship between the parties. Compl. ¶¶ 11-14. Should the Court dismiss the DTSA claim, it should decline to exercise supplemental jurisdiction over all the remaining claims, which are governed by state law. *See Patino v. Franklin Credit Mgmt. Corp.*, 2017 WL 635316, at *5 (N.D. Cal. Feb. 16, 2017) (dismissing state law claims where the plaintiff had failed to adequately plead a federal claim).

**IV. CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: September 14, 2026

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Thomas W. Yeh*
Thomas W. Yeh

Attorney for Defendants
NAVITAS SEMICONDUCTOR USA, INC., CHRISTOPHER ALLEXANDRE, and FELICIA CHENG